IN THE UNITED STATES DISTRICT COURT
FOR THE NORTH DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JASON JOHNSON and ) <br> DAMETRICE JOHNSON ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SEVEN OAKS HOMEOWNER'S ) <br> ASSOCIATION INC. ) <br> ) <br> WILLIAM F. REEDER ) <br> ) <br>     Defendants. ) <br> _____ ) | Civil Action No. <br><br><br><br> JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiffs, Mr. Jason Johnson and Mrs. Dametrice Johnson, (hereinafter the "Johnsons" or "Plaintiffs") file this complaint against Defendants seeking redress for violations of the Fair Housing Act, 42 U.S.C. § 3601 and 42 U.S.C. § 1981.

## **INTRODUCTION**

Mr. Jason Johnson and Mrs. Dametrice Johnson, a black couple, (hereinafter the "Johnsons" or "homeowners") moved into the Seven Oaks community in September 2020—having purchased their property located at 12460 Preserve Lane Johns Creek, Georgia 30005 (hereinafter "home"). Shortly after moving into their

home the Johnsons were confronted with a series of racially discriminatory actions by Seven Oaks Homeowner's Association (hereinafter the "Association" or "Board") and the Seven Oaks Homeowner's Association Board President, Mr. William Reeder.  In April 2021, The Board denied the Johnsons request to erect a small shed on their property for discriminatory reasons.  In January 2022, Defendants prohibited the Johnsons from constructing a pavilion on their property alleging that it violated architectural standards.  Notably, in both instances, the Board had approved the erection of similar structures for white families.  President Reeder told Mrs. Johnson, 'I cannot have my black neighbor's backyard looking better than mine.'

After the Johnsons' reported the discriminatory behavior, Defendants retaliated by sending them a cease-and-desist letter, intentionally interfering, and delaying construction of Plaintiffs' home.  Plaintiffs, by and through their counsel, requested the purported non-discriminatory reasons—as supported by the covenants and restrictions—for the denial of the pavilion build.  To date, Defendants have failed to provide any substantive response.  On or about March 8, 2022, President Reeder called Mrs. Johnson and threatened her to take the pavilion down or he'll "burn that damn thing down." President Reeder continued, "I'll be sending you a violation, and then next I'll be burning that damn thing down."

Defendants have interfered with the Johnsons' federal rights to hold property without unlawful pervasive racial discrimination.  The Johnsons have been subjugated to a series of racially discriminatory comments and practices—resulting in stress, economic injury, and interference with their property use rights.  After engaging in protected activities, including written and verbal complaints of discrimination, Defendants have retaliated by extending the construction ban indefinitely for the erection of the pavilion and threatening the Johnsons directly with acts of violence and arson.  The Johnsons seek pecuniary, equitable, and compensatory damages to make them whole.

## **PARTIES**

1.

Mr. Jason Johnson is adult African American male.  At all times relevant to this action, Mr. Johnson has been and continues to be a resident of Fulton County.

2.

Mrs. Dametrice Johnson is an adult African American female.  At all times relevant to this action, Mrs. Johnson has been and continues to be a resident of Fulton County.

3.

Seven Oaks Homeowner's Association Inc. is a domestic non-profit corporation. The Association's principal place of business is located at 1465 Northside Drive NW, Suite 128, Atlanta, Georgia 30318.  The Association is the governing body and corporate entity of the Seven Oaks Community.  The Association is responsible for managing, enforcing, creating, and maintaining the covenants, codes, and restrictions that run within the community.

4.

Mr. William F. Reeder is a white adult male.  At all times relevant to this action, Mr. Reeder has been and continues to be a resident of Fulton County.  Mr. Reeder is the current president of the Association.  As the president, Mr. Reeder is empowered to make decisions related to the creation, management, and enforcement of the CC&Rs for the Seven Oaks Community.   At all times relevant to this action, President Reeder wielded his authority as President to intentionally discriminate against the Johnsons.  At all times relevant to this Action, President Reeder was acting in his official capacity as president of the Association.

## **JURISDICTION AND VENUE**

5.

This action arises under laws of the United States, including Plaintiffs' claims against Defendant for violations of the Fair Housing Act, a federal civil rights statute. This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988 and 42 U.S.C. § 3613.

6.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Plaintiffs have residence in the Northern District of Georgia, and a substantial part of the events and omissions giving rise to the claims in this action occurred in this district.

## FACTS

7.

The Johnsons are an African American couple.

8.

The Johnsons moved into the Seven Oaks community in September 2020—having purchased their property located at 12460 Preserve Lane Johns Creek, Georgia 30005.

9.

The Seven Oaks community is a luxury neighborhood located in Johns Creek, Georgia.

10.

The Seven Oaks neighborhood is managed and controlled by the Seven Oaks Homeowners Association (hereinafter "Association").

11.

The Association is governed by an elected board.  Once elected to the board, a board member has the authority to assist in the enforcement of the community's CC&Rs, including accepting and denying homeowner applications for architectural changes to the interior and exterior of real property.

12.

The Association also has an Architectural Review Committee (ARC).  The ARC is responsible for reviewing and approving homeowner requests to modify their homes.  The ARC ensures compliance with the Association guidelines.

13.

In 2021, the Board included the following members:

**2021 Board Members before Paul Bello's Resignation**

- President: Paul Bello is a white male.

- Vice President/Secretary: Bill Reeder is a white male.

- Communications: Jason Johnson is a black male.

- Finances: Kyle Lynch is a white male.

- Operations: Haris Velic is a white male.

**2021 Board Members after Paul Bello's Resignation**

- President: Bill Reeder is a white male.

- Vice President: Haris Velic is a white male.

- Communications/Secretary: Jason Johnson is a black male.

- Finances: Kyle Lynch is a white male.

- Member: Paul Bello is a white male.

14.

In 2022, the Board included the following members (after the February 2022

election):

**2022 Board Members before the February 2022 Election**

- President: Bill Reeder is a white man.

- Vice President: Haris Velic is a white man.

- Communications/Secretary: Jason Johnson is a black man.

- Finances: Kyle Lynch is a white man.

- Member: Paul Bello is a white man.

**2022 Board Members after the February Election**

- President: Bill Reeder is a white man.

- Vice President: Haris Velic is a white man.

- Member: Jason Johnson is a black man.

- Finances: David Shelton is a white man.

- Secretary: Rich Newman is a white man.

15.

In 2021, the ARC included the following members:

- Martin Rice, a white male

- Dana Martin, white female

- Peggy Sanders, white female

- Amy Scutt, a white female

- Aaron Han, an Asian male

- Mary Lassiter, a white female

- Robyn Kanner, a white female

- Jennifer Cluthe, a white female (she left mid-year)

16.

In 2022, the ARC included the following members:

- Martin Rice, a white male

- Dana Martin, a white female

- Peggy Sanders, a white female

- Amy Scutt, a white female

- Aaron Han, an Asian male

- Mary Lassiter, a white female

- Robyn Kanner, a white female

17.

In 2022, after the pavilion issue escalated the following members remained:

- Martin Rice a white male

- Dana Martin, a white female

- Peggy Sanders, a white female

- Mary Lassiter, a white female

- Paul Bello, a white male and former HOA board President

- Joan Appelbaum, a white Female and former HOA board member in 2020

18.

Mrs. Dametrice Johnson was a member in 2021 and in 2022.

19.

Mr. Bello and Ms. Appelbaum are friends of President Reeder and joined after the

departure of the other members.

20.

The Board and ARC work together to manage the Seven Oaks community in compliance with the CC&Rs and architectural guidelines.

21.

Beginning in April 2021, the Board denied the Johnsons the opportunity to erect a small shed, alleging that it violated architectural guidelines because it was 'visible from the street.'  The ARC also said the shed was rejected because it wasn't wood.

22.

Notably, white neighbors in the Seven Oaks community had sheds that were visible from the street, that were approved by the Association and ARC.

23.

On May 5, 2021, Mr. Johnson spoke with Ms. Mary Lassiter, Architectural Review Committee administrator and received her verbal authorization to update his pool project.

24.

Mr. Johnson informed Ms. Lassiter that he would like to update the overall project to include a new fence, a new deck, and a pavilion.

25.

Mr. Johnson also informed Ms. Lassiter that the additional items would be constructed by the same pool company and Ms. Lassiter responded, "Yes that is fine, you have my approval, just update me on when everything is done."

26.

To date, the Johnson's have paid $187,093.55 on their home pool and pavilion project.

27.

On November 24, 2021, the Johnsons submitted their modification request for the pool project to the Architectural Review Committee (hereinafter "ARC")

28.

On November 24, 2021, the Johnsons' pool project was approved by the ARC.

29.

On January 22, 2022, Mr. Johnson received a phone call from Ms. Amy Scutt, ARC's Chairperson, informing her that a neighbor had complained about the pavilion.

30.

During the call, Ms. Scutt stated that because the pavilion was visible from the street and neighbors had complained, she would have to plant tall trees to shield the view, or the Johnsons could remove the pavilion altogether.

31.

Mr. Johnson expressed his concerns to Ms. Scutt, but was told President Reeder was the final decisionmaker, and Ms. Scutt instructed Mr. Johnson to contact President Reeder directly.

32.

On January 22, 2022, Mr. Johnson called President Reeder regarding the conversation Mrs. Johnson had with Ms. Scutt.

33.

In Mr. Johnson's conversation, President Reeder stated he knew nothing about the complaint or the pavilion.

34.

Mr. Johnson informed President Reeder that Ms. Mary Lassiter, ARC Administrator, had given a verbal approval for the pavilion, but President Reeder reiterated that the pavilion would need to be shielded by trees.

35.

To get further clarity, Mr. Johnson called Ms. Scutt after speaking with President Reeder.

36.

In their conversation, Ms. Scutt told Mr. Johnson that she had already spoken to President Reeder.

37.

Ms. Scutt and President Reeder were conveying different facts and requirements to Mr. Johnson regarding the pavilion approval process.

38.

For further clarification, on January 24, 2022, Mr. Johnson called President Reeder again to discuss the pavilion.

39.

In their conversation, President Reeder informed Mr. Johnson of complaints from several neighbors about the pavilion.

40.

According to President Reeder, the complaints came from unidentified neighbors, but were received by the Association via email.

41.

Although Mr. Johnson is a member of the board, the Association intentionally concealed the emails from Mr. Johnson, by removing him from the email communications.

42.

In an effort to resolve the purported issues with President Reeder, Mr. Johnson submitted a formal request to ARC for approval.

43.

President Reeder then told Mr. Johnson, "The request will be rejected by the ARC and if it comes to the board via an appeal, the board will reject the request."

44.

President Reeder provided no explanation for the denial of the pavilion request.

45.

Shortly thereafter, Mr. Johnson engaged in protected activity when he notified the Board of their intention to consult with legal counsel because of discriminatory and retaliatory treatment.

46.

In an effort, to deter Mr. Johnson, President Reeder noted, "a lawyer would be expensive."

47.

On January 24, 2022, Mr. Haris Velic, Association Vice President, told the entire board, unlike the position asserted by President Reeder, that no neighbor complaints were sent to him, and that he had no information about the reasons for the denial of the pavilion.

48.

On January 25, 2022, the Johnsons submitted a modification request for a new fence, a deck, and tree replacements which were approved by the ARC.

49.

On January 26, 2022, the Johnsons submitted a modification request for the pavilion which included the full set of documents from the pool construction company and supporting documents from the City of Johns Creek.

50.

On January 26, 2021, while walking within the Seven Oaks neighborhood, President Reeder approached Mrs. Johnson about the pending architectural modification request for the pavilion.

51.

Mrs. Johnson told President Reeder that she felt she was being treated discriminatorily and informed him that several white neighbors have large pavilions which are visible from the street.

52.

President Reeder replied, "Well you're black, and I can't have my black neighbors with a better backyard than mine."

53.

President Reeder was notorious for making 'off color' or derogatory comments and unfortunately this was not the first one directed at Mrs. Johnson.

54.

Immediately following President Reeder's discriminatory comment, Mrs. Johnson repudiated the comment as racist.

55.

President Reeder dismissed her complaint by saying, 'my grandkids are black, so I can't be racist'.

56.

On January 27, 2022, the Board retaliated against the Johnsons with a cease-and-desist letter, prohibiting them from continuing construction on their lot.

57.

The cease-and-desist letter fails to identify any specific reason or covenant that the Johnsons' pavilion plans afront.

58.

Initially, President Reeder said the pavilion would be denied because of neighbor complaints; later, President Reeder alleged that Seven Oaks banned pavilions altogether.

59.

The Johnsons never received an ARC violation.

60.

On January 28, 2022, Mrs. Johnson sent a two-page complaint of discrimination to Seven Oaks—detailing the discriminatory and retaliatory enforcement of the covenants and restrictions.

61.

On January 28, 2022, Mr. Johnson spoke with Kyle Lynch and Mr. Velic, about the cease-and-desist letter.

62.

Vice President Velic and Kyle Lynch, Treasurer informed Mr. Johnson that there was no meeting, no vote, nor a disclosure of the letter of discrimination to the Association from President Reeder.

63.

Vice President Velic also informed Mr. Johnson that he met with President Reeder at the Seven Oaks clubhouse prior to sending out the cease-and-desist letter and

President Reeder told him that ARC will "reject the modification request, then the board will reject it".

64.

When Vice President Velic asked President Reeder how he knew ARC would reject the request, President Reeder could not provide a valid answer and avoided the question.

65.

On January 28, 2022, Mr. Johnson sent President Reeder and Ms. Patricia Aronson, Property Manager an email expressing his concerns.

66.

On January 30, 2022, Mr. Johnson provided ARC with images of the pavilions and detached structures in the Seven Oaks neighborhood that were visible from the street; these photos depicted pavilions on lots owned by non-black families.

67.

On February 1, 2022, Mr. Johnson, the only Black person on the Board, asked President Reeder if the Board would respond to the Johnsons' discrimination complaints to which President Reeder said, "Jason, you can respond to her."

68.

President Reeder trivialized the importance of the matter, saying that he would contact Mrs. Johnson directly.

69.

On February 3, 2022, one of the three ARC members voted to approve the modification request with the requirement of discussing the project with neighbors.

70.

On February 5, 2022, the other two ARC members refused to vote and set the modification request to "Need More Info" and commented that they needed to speak with the neighbors about the project, then report back to ARC.

71.

On February 5, 2022, Mrs. Johnson reached out to Ms. Scutt and Mr. Aaron Han, the two voting members of the ARC and informed them that she had already sent out emails to neighbors about the project.

72.

Notably, the Johnsons disputed the basis for each of these assertions with the following:

1. The Johnsons attempted to minimize any disruption amongst the adjacent properties by providing email notice of the proposed modification to their neighbors

2. The Johnsons disputed the basis for the Board's decision to transfer approval from the Architectural Review Committee and/or the Residential Modifications Committee to neighbors

3. The Johnsons spoke with neighbors who disclosed they had been 'recruited' to complain about the Johnsons' landscaping design

4. The Johnsons have provided photo evidence showing that pavilions are prevalent in the Seven Oaks community

73.

On February 7, 2022, Seven Oaks sent the Johnsons a request for additional information to assess the pavilion modification request.

74.

The February 7, 2022, notice failed to identify what supplemental information was actually required for further evaluation, especially when the Johnsons provided detailed pictures and plans, two weeks prior.

75.

The Boards actions further substantiate its prior series of retaliatory actions, including but not limited to, invention and enforcement of policies not enumerated in the covenants and restrictions.

76.

On or about February 20, 2022, Mr. Velic shared a screen shot text message of an email chain between past and joining board members.  The email included Kyle Lynch, Bill Reeder, David Shelton, Richard Newman, and Paul Bello.

77.

In the email exchange, Mr. Velic noted of the modification requests reviewed by the Association, Mr. Johnson's modification request was ***the only*** one where President Reeder was added as a voting member.

78.

Mr. Velic went on to say "To clarify why Bill being a voting member on this particular mod request is concerning and could open the HOA to liability, this is the only Mod that has been denied that Jason has submitted.  Another one was denied for a shed but then later approved once the shed plans were modified, so technically approved".  Bill has not been on any other Mod request as a voter besides this one, approved or denied (out of dozen plus that I glanced at real quick).  This certainly doesn't look good, regardless of why Bill was added, nor am

I implying any wrongdoing, just looking at the facts, that's it………Based on my review of the HOA design & standards (1988), resolutions, and the CRRs, that ARC is supposed to utilize as their guidance, none of these reasons are valid as none of these conditions are stated anywhere.  Few minutes of looking at the denials, I was not able to find any of the above reasons utilized for any other detail……To wrap this up, based on the inconsistencies of how this mod has been handled, the email from Jason's wife nothing inequity on this mod request, and the reasons for the denial (which are not based on guidance and rules we currently have), we really need to get in front of the HOA corporation as board members to limit its exposure to liability."

79.

In the same email chain, Mr. Velic directed his comments to President Reeder and other members saying "If we go down the request for "read only" account, why even request that on this particular Mod, you didn't request to be "read only" on any other mod? Again, we're trying to have this run it's "normal" course without boards interaction per your request, reason why we've been kept out of it.  What is concerning in this is your statement of "If the ARC approved the structure the Board would have to overrule the ARC.", why would the Board overrule their approval? We are yet to even discuss nevertheless vote on this as a board but

you're claiming that the board would overrule it. This only leads me to believe that somehow you are sure the board will deny this mod, with a adamant stance that you've taken of not discussing this prior to the ARC decision, how can you come to that conclusion? To further add to perception inequity on this, why would the board get involved on a Mod if ARC approved it.. .. We don't "overrule" any other approved Mods, in my year here. Again, you are not treating this as any other request as you keep saying we should."

80.

On February 11, 2022, the Johnsons' attorney sent President Reeder, the Association, and the Seven Oaks Property Management a formal demand letter requesting non-discriminatory processing of their pavilion request, among other things.

81.

On February 15, 2022, the board held an internal meeting and President Reeder asked Mr. Johnson to leave so the rest of the board could discuss the lawsuit.

82.

Roughly 30 minutes after Mr. Johnson was asked to leave the meeting, the ARC voters on the Johnsons' modification request were changed.

83.

Board members were replaced with three new voters, and President Reeder was removed as a voter.

84.

Consequently, two of the three new voters voted to decline the pavilion.

85.

On February 15, 2022, the Johnsons received the denial letter from the ARC Committee noting 1) The roof height alone is more in keeping with a two story structure 2) The size of the pavilion is roughly a third of the backyard 3) The location of the pavilion leaves little room if any for it to be shielded from view and 4) The proportion of the pavilion is not in keeping with the size of the lot.

86.

Notably, the reasons for the denial do not align with the Seven Oaks CCRs or design standards.

87.

On the February 18, 2022 email chain, Mr. Velic emailed the board members, excluding Mr. Johnson, to address President Reeder's actions with handling the modification request.

88.

President Reeder responded to Vice President Velic's email stating that if ARC approved the pavilion, the board would overrule ARC without providing a reason.

89.

On February 19, 2022, the Johnsons filed a 'Housing Discrimination Complaint' with the U.S. Department of Housing and Urban Development.

90.

On February 21, 2022, Mr. Johnson emailed the Seven Oaks board and asked for an appeal on the ARC's decision.

91.

On February 25, 2022, Mr. Velic informed Mr. Johnson of an internal board meeting held on February 24, 2022, where President Reeder was asked why he would overrule ARC if they had approved the Johnson's pavilion, but President Reeder was unable to provide a valid reason or response and dismissed the question.

92.

On March 4, 2022, the Seven Oaks board sent the Johnsons a denial letter to their appeal.

93.

The board's contention for denying the appeal was that Mr. Johnson refused to provide statements or evidence, but Mr. Johnson did, in fact, send the appeal request.

94.

Mr. Johnson spoke with Mr. Velic regarding the appeal denial and informed him that he voted to approve the pavilion while the other three voted to deny the appeal.

95.

The other three members of the board who voted to deny the appeal were white men.

96.

President Reeder and the other board members tried to persuade Mr. Velic to deny the pavilion and support the ARC by being a "team player".

97.

To-date, no one from the Board has acknowledged or addressed the substantive concerns of discrimination.

98.

On March 9, 2022, President Reeder called Mrs. Johnson saying, "If you don't take that pavilion down then I'll burn that damn thing down." "I'll be sending you a

violation, and then next I'll be burning that damn thing down," "I have been here for over 20 years, and you aren't the first family that I've gotten rid of, just remember that."

99.

Mrs. Johnson called Johns Creek Police Department and filed a formal report on the assault.

100.

To-date, the Johnsons remain unable to resume construction of the pavilion on their home.

101.

White families with similar looking pavilions were approved by ARC and the board:

1.  12105 Meadows

2.  150 E Meadows

3.  12313 Sunset

4.  180 E Meadows

102.

Mr. and Mrs. Johnson have identified over thirty homes, belonging to non-black families, with similar structures that were approved by ARC and the board.

## COUNT I: FAIR HOUSING ACT VIOLATION BASED ON RACE

*(The Johnsons Against Seven Oaks Association Inc. And William Reeder)*

### 103.

Plaintiffs reinstate and reincorporate P1—P102 stated above.

### 104.

The Johnsons are within the protected classification of race covered under the Fair Housing Act, as a black couple.

### 105.

The Johnsons were intentionally and with malice aforethought denied the opportunity to participate in the terms, conditions, and privileges granted to Homeowners of the Seven Oaks community because of their race.

### 106.

The Johnsons were intentionally and with malice aforethought denied the provision of services in connection with homeownership in the Seven Oaks community because of their race.

### 107.

President Reeder, by and through his discriminatory scheme, intentionally interfered with the ARC and Association approval processes for the Johnsons' pavilion project because he didn't want the Johnsons to have a better backyard than him because they are black.

108.

President Reeder's motivations for denying the Johnsons' pavilion project are rooted in racial animus and racial hierarchies, suggesting that black people should not have more attractive landscaping than white people.

109.

President Reeder's decision to deny the pavilion, overrule the decision of the ARC prematurely, removal of ARC members to replace them with white male voting members, decision to make himself a voting member of the Johnsons' pavilion project, and direct threats of violence are rooted in ideals of white supremacy.

110.

President Reeder purposefully interfered with the Johnsons' federal civil rights to be free from discriminatory terms, conditions, and privileges of home ownership based on their identification as black persons.

111.

The Association, by and through the acts of its board members, have purposefully and intentionally co-signed in the discriminatory application of the CC&Rs against the Johnsons.

112.

After having notice of the discriminatory treatment, the Association refused to

intervene and stop the discriminatory behaviors of their president.

113.

Defendants have not denied white homeowners within the Seven Oaks community

the ability to erect pavilions that are visible from the street.

114.

Defendants have not applied the ARC modification request process in a

discriminatory fashion against white homeowners within the Seven Oaks

community.

115.

Defendants have not invented covenants and restrictions to wield against white

homeowners within the Seven Oaks community, to deny them access to the

modification process on their lots.

116.

Defendants have not manipulated the modification procedure to discriminatorily

deny white homeowners within the Seven Oaks community the right to make

changes to their homes.

117.

Defendants' discriminatory actions are a violation of the Fair Housing Act, 42

U.S.C. § 3604(b).

118.

As a result of the unlawful actions of Defendants, the Johnsons have suffered loss

of income, emotional pain, suffering, mental anguish, attorney's fees, and other

non-pecuniary losses.

## COUNT II: RETALITORY INTERFERNCE IN CONTRAVENTION OF THE FAIR HOUSING ACT

*(The Johnsons Against Seven Oaks Association Inc. And William Reeder)*

119.

Plaintiffs reinstate and reincorporate P1—P102 stated above.

120.

The Johnsons are within the protected classification secured by the Fair Housing

Act, as a black couple.

121.

Mrs. Johnson engaged in protected activity pursuant to Section 3604 when she told

President Reeder that his comment that 'well you're black and I can't have my

black neighbors with a better backyard than mine' was discriminatory and racist.

Mrs. Johnson told President Reeder, 'I will be reporting you to the FHA for discrimination.'

122.

The Johnsons engaged in protected activity pursuant to Section 3604 when Mrs. Johnson sent a 2-page complaint of discrimination to the Association in late January 2022.

123.

Mr. Johnson engaged in protected activity pursuant to Section 3604 when he asked President Reeder whether the Association was going to respond to their complaints of discrimination.

124.

Mr. Johnson engaged in protected activity pursuant to Section 3604 when they sent a demand letter, via their counsel, requesting that the discriminatory enforcement of the CC&Rs stop immediately.

125.

The Johnsons engaged in protected activity pursuant to Section 3604 when they appealed the discriminatory denial of the pavilion build—explaining that the denial was rooted in racial animus toward black people.

126.

The Johnsons engaged in protected activity pursuant to Section 3604 when they filed a formal complaint with Housing and Urban Development in February 2022.

127.

The Johnsons engaged in protected activity several times between January 2022-March 2022, during their conversations with board members, noting that the denial of the pavilion was discriminatory.

128.

Mrs. Johnson engaged in protected activity pursuant to Section 3604 when she sent an email to the Association in response to President Reeder's threats to burn down her home on March 9, 2022, saying: "I feel extremely unsafe in Seven Oaks, due to the repeated harassment that I have endured from members of ARC and from Bill Reeder. I especially feel unsafe after the threatening phone call that I received today. I will be updating this information to my attorney and to our Housing and Urban Development specialist, in which our Racial discrimination and retaliation claim is currently being investigated."

129.

After having notice of these protected activities, Defendants retaliated against the Johnsons by repeatedly denying the pavilion build request for discriminatory reasons, interfering with their fair housing rights by manipulating the approval

process, ignoring the Johnsons requests to resolve the matter, ignoring legal notices to stop the discriminatory behavior, sending the Johnsons' a cease-and-desist letter, dissuading the Johnsons from seeking counsel, acquiescing and approving the discriminatory denial of the pavilion build, creating false explanations to deny the pavilion build to hide discriminatory animus, and threatening to burn down the Johnsons' pavilion.

130.

Defendants intentionally and with malice aforethought coerced, intimidated, and threatened the Johnsons after they asserted their rights under the Fair Housing Act.

131.

Defendants intentionally interfered with the Johnsons right to protest racially discriminatory enforcement of the Seven Oaks Community CC&Rs.

132.

The Johnsons were intentionally and with malice aforethought denied the exercise and enjoyment of their fair housing rights in connection with homeownership in the Seven Oaks community because of their protected activities related to racial discrimination.

133.

Defendants' retaliatory discriminatory actions are a violation of the Fair Housing Act, 42 U.S.C. § 3617.

134.

As a result of the unlawful actions of Defendants, the Johnsons have suffered loss of income, emotional pain, suffering, mental anguish, attorney's fees, and other non-pecuniary losses.

**COUNT III: SECTION 1981 RACIAL DISCRIMINATION IN THE PERFORMANCE OF CONTRACT**

*(The Johnsons Against Seven Oaks Association Inc. And William Reeder)*

135.

Plaintiffs reinstate and reincorporate P1—P102 stated above.

136.

Plaintiffs purchased their home within the Seven Oaks community in September 2020.  By virtue of their purchase, the Johnsons became automatic members of the Association.  See, Clause 2.03 Membership.

137.

Because the Johnsons' home is located within the Seven Oaks community, the

purchase subjected them to the Covenants, Conditions, and Restrictions running

with the land within the community.

138.

Pursuant to 2.06 of the CC&Rs, The Association is empowered to enforce the

declaration, articles, bylaws, and other applicable laws without a specific

resolution from the homeowners.

139.

As homeowners within the Seven Oaks community, the Johnsons have the right to

enjoy "all benefits, privileges, terms, and conditions of the contractual

relationship" including the right to request architectural modifications pursuant to

the CC&Rs on a non-discriminatory basis.

140.

Defendants have breached Covenant 9.03.02, which provides in relevant part that

"Approval of any request [architectural exterior modification] shall not be withheld

solely in a ***discriminatory manner*** or in a manner which unreasonable prohibits the

reasonable improvement of any Lot or Home…" (emphasis added)

141.

Defendant Association had knowledge and notice of President Reeder's discriminatory motive and actions and intentionally failed to intervene to prevent ongoing discriminatory impact to the Johnsons.

142.

Defendant Reeder purposefully, unlawfully, and with malice, discriminated against the Johnsons in the performance of the Conditions, Covenants, and Restrictions by denying them the opportunity to build a pavilion because of their blackness.

143.

Defendants denied the Johnsons the same right to make and enforce employment contracts, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, as described above and to be further proved at trial, because of their race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

144.

As a result of the unlawful actions of Defendants, the Johnsons have suffered loss of income, emotional pain, suffering, mental anguish, attorney's fees, and other non-pecuniary losses.

145.

Based on all the facts incorporated to support this Count, Plaintiffs have demonstrated that Defendants violated the Johnsons' Section 1981 rights by subjecting them to a discriminatory architectural modification process.

## COUNT IV: ASSAULT PURSUANT TO O.C.G.A. 51-1-14

*(Mrs. Johnson against Mr. Reeder)*

### 146.

Plaintiffs reinstate and reincorporate P95—P102 stated above.

### 147.

Defendant Reeder intended to cause and did cause Mrs. Johnson to suffer apprehension of an immediate and harmful contact.

### 148.

Defendant deliberately assaulted Mrs. Johnson when he called her on the phone and threatened to burn down her pavilion.

### 149.

President Reeder knows the Johnsons' address, and President Reeder has access to the community by virtue of his home ownership therein.

### 150.

President Reeder could fulfill his violent plot by walking over to the Johnsons' home.

151.

Mrs. Johnson was at all relevant times aware of Defendant's actions, intentions, and ability to injure Mrs. Johnson and her family by virtue of his direct threats; Reeder told her, "I'll be sending you a violation, and then next I'll be burning that damn thing down," "I have been here for over 20 years, and you aren't the first family that I've gotten rid of, just remember that."

152.

As a direct and proximate result of the willful, malicious, and intentional actions of Defendant, Mrs. Johnson suffered mental anguish, humiliation, and embarrassment.

## COUNT V:
## ATTORNEY'S FEES

*(The Johnsons Against Seven Oaks Association Inc. And William Reeder)*

153.

Based on the facts alleged in this Complaint, Plaintiff is entitled to attorney's fees against Defendant under 42 U.S.C. § 1988(b), 42 U.S.C. § 3613, and all applicable laws.

## COUNT VI:
## ATTORNEY'S FEES
### *(The Johnsons Against William Reeder)*

Based on the facts alleged in this Complaint, Plaintiffs are entitled to attorney's fees against Defendant under O.C.G.A. 13-6-11, and all applicable laws based on Mr. Reeder's bad faith behaviors summarized herein in P146-P152.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays this Court:

a) That process issue and service be had on each Defendant;

b) That a jury trial be had on all issues so triable;

c) That Plaintiffs be awarded all costs and other expenses in an amount to be determined at trial, including attorney's fees;

d) That Plaintiffs have judgment against Defendants for punitive damages;

e) That this Court grant compensatory and equitable relief to Plaintiffs;

1) Plaintiffs request that this Court enjoin Defendants from enforcing the CC&Rs in a discriminatory manner against black homeowners.

2) Plaintiffs request that this Court require Defendants to institute measurable benchmarks and policies for the enforcement of

architectural guidelines within the Seven Oaks Community, to

eliminate discriminatory enforcement of the CC&Rs.

3) Plaintiffs request that this Court require Defendant Board to

institute and maintain records revealing the approval and disapproval

rates of Seven Oaks community homeowners for compliance with

equitable request No. 1.

f) That Plaintiffs receives such other and further relief as this Court deems

just and proper.

DATE: March 17, 2022

Respectfully submitted,

/s/ Angelik Edmonds
Angelik Edmonds
Attorney for Plaintiffs
GA Bar: 650757
Edmonds Law Office of Civil Rights LLC
691 John Wesley Dobbs Avenue NE
Suite V-17 Atlanta, Georgia 30312
O: 678-404-1239
F: +1 678-623-9090
E: angie@aedmondslaw.com